UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

BRENDA OJEDA,

Plaintiff,

**MEMORANDUM & ORDER**
24-CV-5789(EK)

-against-

COMMISIONER OF SOCIAL SECURITY,

Defendant.

--------------------------------------x

ERIC KOMITEE, United States District Judge:

Plaintiff Brenda Ojeda challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. Ojeda argues that the administrative law judge improperly concluded that she retained the functional capacity to work at the "medium" exertional level, as defined by agency regulations. For the following reasons, I deny plaintiff's motion and grant the Commissioner's.

## I. Background

### A. Procedural Background

In May 2021, Ojeda applied for benefits, alleging a disability onset date of November 2020. Administrative Tr. ("Tr.") 104, ECF No. 6. The agency denied her claim. *Id.* at 105. On September 1, 2022, an administrative law judge ("ALJ"), Marguerite Toland, held a hearing on Ojeda's claim. *Id.* ALJ

Toland concluded that Ojeda was not disabled and therefore not entitled to disability benefits. *Id.* at 104. The Appeals Council upheld the ALJ's decision, rendering it final. Tr. 4, 8. Ojeda timely sought review of that decision in this Court. Compl., ECF No. 1.

**B. The ALJ's Disability Evaluation**

Under the Social Security Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed

Impairments”). *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Ojeda had not engaged in substantial gainful activity since her alleged onset date. Tr. 107. The ALJ also determined that Ojeda suffered from the “severe impairments” of degenerative disc disease of the lumbar spine with radiculopathy, and arthralgia (joint pain). Tr. 107. However, the ALJ concluded that none of these rose to the level of a Listed Impairment. Tr. 108-09.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant’s residual functional capacity (“RFC”), which is the most a claimant can do in a work setting notwithstanding her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded that Ojeda had the RFC to perform “medium work” with limitations. Tr. 109; 20 CFR §§ 404.1567(c), 416.967(c) (defining medium work). Medium work “involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.” 20 C.F.R. § 404.1567(c). “A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . . .” SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). As for limitations in the

RFC, the ALJ determined that Ojeda "cannot climb ropes," "can only occasionally stoop," and should be limited to "unskilled work involving simple, routine tasks." Tr. 109.

At step four, the ALJ considered whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Ojeda could not perform her past work as a home health attendant. Tr. 111. Moving to step five, the ALJ identified jobs available in significant numbers in the national economy that Ojeda could perform, including as a food service worker. Tr. 112; *see* 20 C.F.R. § 404.1520(g). Given that determination, the ALJ concluded that Ojeda was not disabled. Tr. 112-13.

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[1]

"Substantial evidence means more than a mere

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III. Discussion

Ojeda argues that the ALJ's RFC determination is not supported by substantial evidence, for two related reasons. Pl.'s Mem. 11, ECF No. 8-1. First, she argues that the ALJ did not adequately account for the opinion of consultative examiner Dr. Sharon Revan. Dr. Revan opined that Ojeda has "moderate limitations with sitting, standing, [and] walking . . . due to her back pain." *Id.* Second, Ojeda argues that the ALJ "failed to properly assess [her] ability to perform work activities on a function-by-function basis before finding her capable of performing medium work." *Id.* at 12.

### A. The RFC Determination is Supported by Substantial Evidence

Ojeda argues that Dr. Revan's assessment of "moderate limitations" with sitting, standing, and walking required the ALJ to include limitations for those functions in Ojeda's RFC. Pl. Mem. 11. Ojeda's argument is unavailing. As set out below, the ALJ pointed to "substantial evidence" that Ojeda could perform those functions as required by medium work.

When compiling a claimant's RFC, the ALJ may not rely exclusively on a medical assessment that a claimant has "moderate" limitations. *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000). Such an assessment is "vague," and without additional information, cannot establish the claimant's ability to perform the relevant function. *Id.*; *see Cooper v. Saul*, 444 F. Supp. 3d 565, 579 (S.D.N.Y. 2020) (collecting cases). Nevertheless, an assessment of "moderate limitation[s] for sitting, standing, [and] walking" will often be consistent with the ability to perform those functions for the duration required by medium work. *See, e.g.*, *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *15 (W.D.N.Y. Feb. 25, 2015) (collecting cases); *Nelson v. Colvin*, No. 12-CV-1810, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014)(assessment of "mild to moderate limitation" "supported" claimant's ability to walk, sit, and stand for six hours) (citing *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013)).

When a claimant has "moderate limitations" in a relevant function, the court must determine whether the ALJ "provided reasons tending to support the finding that, despite the moderate limitations, plaintiff could still perform . . . medium work." *Harrington*, 2015 WL 790756, at *15. In *Harrington*, the court affirmed the ALJ's determination that the claimant had the "ability to sit, stand, [and] walk for up to

six hours per day," despite a doctor's assessment that his arthritis imposed "moderate limitations" with respect to those functions. *Id.* The ALJ cited evidence that the claimant's symptoms were "much less severe" after treatment; his physical examinations were "satisfactory"; and he could perform "activities of daily living." *Id.*

In this case, Ojeda's ability to sit, stand, and walk for up to six hours per day is supported by substantial record evidence. *See Cichocki v. Astrue*, 729 F.3d 172, 177–78 (2d Cir. 2013).

First, the ALJ cited notes of Ojeda's physical therapy sessions from April 2021 through January 2022. Tr. 110. According to those notes, Ojeda reported at an April 2021 appointment that she had "difficulty walking" and was "unable to sit for long." Tr. 412. Later notes state that, by July 2021, Ojeda was "able to sit for a longer time than before" and could better perform activities of daily living. Tr. 364. Ojeda showed similar improvement at her physical therapy sessions through January 2022. Tr. 110; *see* Tr. 362-415, 558-609 (physical therapy notes). Moreover, notes from her January 2022 assessment state that she had "less pain than before with prolonged standing." Tr. 605.

While not a medical source, physical therapy notes can constitute "substantial evidence" if they are "well-documented"

and "well-reasoned." *See Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389-90 (W.D.N.Y. 2014). The ALJ here pointed to detailed physical therapy assessments that describe with specificity Ojeda's increased ability to sit and stand for a prolonged duration. Tr. 110. And Ojeda pointed to no record evidence that contradicts her improvement in performing these functions. Pl. Mem.; *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (claimant bears the burden to show she is entitled to a more restrictive RFC).

In addition, the ALJ found persuasive Dr. Revan's October 2021 consultative exam. Tr. 111. As noted above, Dr. Revan's notes indicate that Ojeda has "[m]oderate limitations with sitting, standing, [and] walking . . . due to her back pain." Tr. 499. The notes also provide that Ojeda has "no limitations" in performing the "activities of daily living," including that she could "cook, clean, [do] laundry, and shop." Tr. 497-99. Dr. Revan opined further that at her exam, Ojeda could "walk on heels and toes without difficulty"; exhibited a "normal" gait and stance; and was able to perform a full squat. Tr. 498. Further, Ojeda showed "full range of motion of hips, knees, and ankles," and "stable and non-tender" joints. *Id.*

Although she assessed "moderate limitations" in sitting, standing, and walking, Dr. Revan also offered findings that support Ojeda's ability to sit and stand at the required

levels. In particular, Dr. Revan found "no limitations" in the activities of daily living. While such an assessment does not alone substantiate an RFC determination, it is an "important indicator of the intensity and persistence of the [claimant's] symptoms." 20 C.F.R. § 416.929(c)(3); *see Durante v. Colvin*, No. 13-CV-1298, 2014 WL 4843684, at *2 (D. Conn. Sept. 29, 2014). Here, Ojeda's daily activities include cooking and cleaning, which further substantiates her ability to walk and stand at the levels required. *See Harrington*, 2015 WL 790756, at *15.

Finally, the ALJ cited examination notes from Orlin and Cohen Medical Specialists. Tr. 110. Ojeda saw Dr. Glenn Babus and Dr. Steven Lin at this practice for pain management between July 2021 and August 2022. *Id.* According to Dr. Babus's July 2021 examination notes, Ojeda stated that she could walk for 10 blocks without pain, sit for 30 minutes, and stand for 40 minutes. Tr. 110, 610. However, Dr. Babus's examination notes from the same appointment, as well as from August 2021, state that Ojeda had a normal gait and no sensory or motor deficits. Tr. 611-12, 615-16. And Dr. Lin's notes from a March 2022 follow-up exam state that Ojeda exhibited "normal toe and heel walking" and "normal turning." Tr. 110, 623.

Taken together, this evidence "support[s] the finding that" Ojeda could perform the sitting, standing, and walking

required by medium work. *See Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014). As noted, an assessment of "moderate limitations" is often consistent with an RFC of medium work. *Id.*; *see Cooper*, 444 F. Supp. 3d at 579. Here, the ALJ cited evidence that Ojeda improved in performing the required functions and consistently exhibited a normal gait and stance, despite these limitations. Tr. 110. And Ojeda has identified no other persuasive evidence that would support a more restrictive RFC. *Smith*, 740 F. App'x at 726. Apart from Dr. Revan's report, Ojeda points only to her subjective complaints. Pl. Mem. 11. But the ALJ was "not required to accept the claimant's subjective complaint[] . . . in light of the other evidence in the record," *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010), which was substantial in this case.

Nor has Ojeda shown that the ALJ failed to account for Dr. Revan's report. The ALJ found that report "persuasive." Tr. 111. In doing so, she "considered the medical and other evidence in the record in its totality to reach [the] RFC determination." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48, n.3 (2d Cir. 2021).

### B. The ALJ Adequately Conducted a Function-By-Function Analysis

Ojeda also argues that the ALJ failed to assess her ability to "sit, stand, walk, lift and carry" on a function-by-

function basis before reaching the RFC determination. Pl. Mem. 12-13.

As set out above, the ALJ did assess Ojeda's ability to sit, walk, and stand for the duration required by medium work. Accordingly, Ojeda's argument concerning the ALJ's assessment of these functions is without merit.

To be sure, the ALJ did not conduct a function-by-function analysis of Ojeda's ability to lift and carry. *See* Tr. 109-11. Such an assessment, however, was not required here. The Second Circuit has held that "an ALJ's failure to conduct an explicit function-by-function analysis" does not "*per se*" require remand. *Cichocki*, 729 F.3d at 176–77. Instead, the "relevant inquiry" remains "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Id.* at 177. "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

No special analysis of Ojeda's ability to lift and carry was required under this standard. As the ALJ recognized, Dr. Babus opined that Ojeda "cannot do any heavy lifting." Tr. 111, 642. However, the ALJ determined that his opinion was "not persuasive," as it was "vague in terms of how limited the

claimant is." Tr. 111. The ALJ permissibly exercised her discretion in rejecting Dr. Babus's opinion on this basis. *Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) (ALJ did not err in rejecting examiner's "vague" opinion). In any case, Dr. Babus's' assessment concerned heavy lifting, which is *above* the lifting requirements for medium work. *See* 20 CFR §§ 404.1567(c).

Moreover, the ALJ cited evidence that Ojeda *could* lift and carry. Specifically, Dr. Revan opined that Ojeda exhibited "full range of motion of shoulders [and] elbows." Tr. 110, 498-99; *see Little v. Colvin*, No. 14-CV-63, 2015 WL 1399586, at *2, *10 (N.D.N.Y. Mar. 26, 2015). Further, the ALJ cited Ojeda's physical therapy exams from July 2021 through January 2022, which show that she improved in her ability to lift throughout that period. Tr. 110, 568. Accordingly, the record contains no persuasive evidence showing that Ojeda was unable to lift and carry at the required levels. Pl. Mem. 13; *see Smith*, 740 F. App'x at 726. The ALJ was thus not required to individually assess these functions. *Cichocki*, 729 F.3d at 176-77.

## IV. Conclusion

For the foregoing reasons, Ojeda's motion for judgment on the pleadings is denied, and the Commissioner's motion is granted. Ojeda's complaint is dismissed with prejudice.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: August 17, 2026
Brooklyn, New York